## VIVIER et al. v. BARREDA et al.
### No. 10922.

Court of Civil Appeals of Texas.
San Antonio.
May 28, 1931.

Rehearing Denied July 2, 1931.

John A. Vivier, of Houston, and Abney & Whitelaw, of Brownsville, for appellants.

R. A. Dunkelberg and Ira Webster, Sr., both of Brownsville, for appellees.

SMITH, Chief Justice.

It is conceded that on June 1, 1932, Mary E. Vivier and Joe Vivier, Sr., executed and delivered their promissory note payable to Texas State Bank & Trust Company of Brownsville, secured by their deed of trust conveying certain lands in Cameron County.

On August 27, 1936, this suit was brought upon the note and deed of trust lien against the Viviers by C. P. Barreda as "agent and attorney in fact of Enrique Lopez de San Roman, Feliciano Lopez de San Roman, *Fernando Lopez de San Roman,* Fernando Lopez Vda. de Uruburu, and Emilia Nordahausen Eidel, being the heirs and only heirs of Tecla San Roman Lopez, deceased."

At the first trial Barreda, as agent, recovered judgment against the Viviers upon the note and for foreclosure of the deed of trust lien, but that judgment was reversed by this Court upon the ground that the plaintiffs had not alleged ownership of the note. 110 S.W.2d 1233. At the last trial Barreda again recovered and the Viviers have appealed.

On return of the mandate Barreda filed his first amended original petition reciting: "Now comes Enrique Lopez de San Roman, Feliciano Lopez de San Roman, Fernanda Lopez Vda. de Uruburu, a feme sole, and Emilia Nordhausen y Eidel, a feme sole, hereinafter styled plaintiffs, by their duly and lawfully constituted agent and attorney in fact, C. P. Barreda."

It will be observed that *Fernando Lopez de San Roman,* named as a plaintiff in the original petition and described therein as one of the principals for whom Barreda, as agent, purported to bring the action, was omitted as a plaintiff, as well as from the list of principals named, in the amended petition.

It was further alleged in the amendment that the plaintiffs are residents of the Kingdom of Spain, transacting business in Cameron County, Texas, through attorneys in fact, one of said attorneys being C. B. Barreda, and that plaintiffs, "being the sole and only heirs of Tecla San Roman Lopez, Deceased, they sometimes transacted business under the name and style of Heirs of Tecla San Roman Lopez, Deceased, and also Estate of Tecla San Roman."

The amendment also alleged that the note and deed of trust, before maturity and without notice, were sold, endorsed and delivered to the plaintiffs through their then agent and attorney in fact, Joe Celaya.

It is conceded that six months after the execution of the note the State Banking Commissioner properly took over the affairs of the Bank for liquidation under the statute, with Lee L. Adams as special agent in charge, and that this liquidation continued through the period of the transactions involved here. It is true, too, that through successive powers of attorney Joe Celaya and Joe Celaya, Jr., respectively, of Brownsville, were the duly constituted attorneys in fact for appellees, with power to demand, receive and collect the note here sued on. Celaya, Sr., was so appointed on October 14, 1927, and Joe Celaya, Jr., was so appointed on January 27, 1928, and continued in the office until October 26, 1935, when his powers were revoked on the ground that he no longer resided in Brownsville. It appears that shortly before that revocation, on September 16, 1935, appellees appointed C. P. Barreda as their attorney-in-fact to collect debts due appellees, by suit or otherwise. It was under that power, so conferred, that Barreda, on August 27, 1936, instituted and has since prosecuted this suit, as attorney-in-fact, or agent, for appellees.

The note in suit bore the following undated endorsements:

"Without recourse, Texas Bank and Trust Company, Brownsville, Texas, by Joe Celaya, Cashier."

"Without recourse this note is hereby transferred and assigned as well as the security to Joe Celaya, Jr., Agent. Texas Bank and Trust Company, Brownsville, Texas, by Lee L. Adams, Special Agent."

This latter endorsement is followed by a notation: "Credit Acct. Est. Tecla San Roman."

As stated, at the time of the second endorsement the bank was lawfully in the hands of the Banking Commissioner, of whom Lee L. Adams was special agent in charge. It appears that sometime after the second endorsement was put on the note the Banking Commissioner executed a purported confirmation of that endorsement, but, as both parties contend, and present the appeal upon the theory, that that attempted confirmation was a nullity as an enforceable transfer of the note, it need not be considered as such in disposing of this appeal (and appellants' second and fifth propositions become immaterial and are here overruled).

The notation following the second endorsement, to-wit: "Credit Acct. Est. Tecla San Roman," appears to be no more than a private notation made by the bank for its information and convenience, and therefore was surplusage, unless it may be considered as a circumstance tending to identify the transaction as a transfer from the bank to the heirs of Tecla San Roman de Lopez, through endorsement to Celaya as their agent and attorney in fact. The record supports the implied finding of the trial court that the bank, which had endorsed the note in blank, thereafter by special endorsement transferred it to Celaya in his authorized capacity as agent and attorney in fact for appellees; that appellees duly appointed Barreda as such attorney in fact, and thereupon revoked Celaya's power, whereby Barreda was empowered to take delivery of the note and institute and maintain the suit thereon, as he has done.

It is true, as appellants point out, that Celaya, the final endorsee, did not himself transfer the note by his endorsement. But it was endorsed to him only in his capacity as appellees' agent by virtue of the power of attorney held by him, and their revocation of that power of attorney deprived him of authority to transfer the instrument; that authority had been lodged, in the meantime, in Barreda, through power of attorney duly executed by appellees, in whose behalf Celaya had theretofore acted. By the revocation of Celaya's power and the transfer of that power to Barreda, the title of Celaya as agent passed into Barreda as

such agent. This conclusion, resting upon undisputed facts, seems to be elemental and obvious. This method of transfer of the note would not be sufficient for the purpose of negotiation, but appellees, the endorsees through Celaya their agent, elected to enforce the obligation by suit, rather than hypothecate it by negotiation, which would have required endorsement.

By these conclusions we are relegated to the question of whether Barreda, who was in actual possession of the note and produced it upon the trials of this cause, had such title as would authorize him to maintain this suit thereon.

Appellants' first proposition is that: "The last endorsement of the note sued upon, which note and all endorsements were offered by the plaintiffs in evidence without qualification, is a special endorsement to Joe Celaya, Jr., Agent, and the plaintiffs having failed to show any endorsement by Joe Celaya, Jr., Agent, show no title to the note sued upon, and mere possession of the note is not sufficient evidence of ownership."

■ We think the questions raised are determinable in the main by the provisions of Art. 5932, § 16, R.S.1925. Appellants do not deny, and in effect concede, and the trial court impliedly found, upon sufficient evidence, that Celaya took delivery of the note upon its endorsement to his order. By that process the transfer of the note was completed in Celaya, as agent of appellees. He thereby became the owner and holder of the instrument as such agent. When Barreda succeeded to the powers and authority of Celaya, he stepped into the shoes of the latter, and although he could not have negotiated the note without endorsing it, he certainly could enforce the obligation by suit without first endorsing it. The record shows that immediate physical delivery of the instrument to Barreda was made by an apparent stranger to the transaction. But that fact would not impair Barreda's title to the note. The general rule is that a negotiable instrument does not become a binding obligation upon any one until it is delivered by him to the payee with the intention of making it effective, but that rule does not apply to subsequent holders in due course. Such delivery is requisite as between maker and payee, but

when so delivered to the latter the obligation is complete and subject to negotiation by the payee in the manner provided by the Negotiable Instrument Act. When payable to bearer or endorsed in blank, any holder is resumed to be the owner; if payable to order the endorsee, if in possession, is deemed to be the owner. Art. 5934, § 30. In this case the instrument was endorsed to the order of Celaya, as agent, and when Celaya was succeeded by Barreda as such agent and took possession of the instrument, title was completed in him, and under the powers conferred upon him by his principals he was authorized to bring suit and enforce the obligation, as he seeks to do here. We overrule appellants' first proposition.

In their third proposition appellants assert that plaintiffs' cause of action was barred by limitations, but we are of the opinion that this proposition is not well taken. American Indemnity Company v. Hidalgo County, Tex.Civ.App. 146 S.W.2d 1076, writ refused. We overrule that proposition.

■ Appellants complain in their fourth proposition that the trial court erred in the trial on the merits, in that the court admitted and considered evidence which had been taken in limine upon the hearing of appellants' pleas in abatement. The statement under this proposition is inadequate to show injury to appellants, and the proposition will be overruled.

In their sixth proposition appellants complain of the sufficiency of the service upon a third party below and not a party to this appeal. We think that service was sufficient, and overrule that proposition.

■ In their seventh proposition, appellants contend that appellees' suit may not be prosecuted without alleging and proving that there was no administration upon the estate of appellees' ancestor, nor necessity therefor. Appellees reply to this contention by contending that their suit was not brought by them in the capacity of heirs; that the term "heirs" used in their petition was merely descriptive, and not intended to fix the capacity in which they sued. We are of the opinion that the record sustains appellees' contention, and overrule appellants' seventh proposition.

The judgment is affirmed.